Bearl Sprott v. Commissioner. Gertrude Cole Sprott v. Commissioner.
Sprott v. Commissioner
Docket Nos. 32340, 32341.
United States Tax Court
1953 Tax Ct. Memo LEXIS 367; 12 T.C.M. (CCH) 165; T.C.M. (RIA) 53051; February 17, 1953
*367 Arthur Livingston, Esq., for the petitioners. Francis P. Campbell, Jr., Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for 1947 of $5,302.29 against Bearl and of $5,378.28 against Gertrude Cole Sprott. The only issue for decision is whether the Commissioner erred in failing to allow each petitioner a net operating loss carry-back from his 1949 business activities in the amount of $13,906.07 which would entitle each to a net operating loss deduction of $12,906.07 applicable to 1947. Findings of Fact The petitioners, husband and wife, living in California, filed separate income tax returns for 1947 on a cash basis with the collector of internal revenue for the Sixth District of California. Bearl was regularly engaged in 1949 in operating a business at Newport, California. The business consisted of acting as a boat broker, chartering boats and operating dock facilities including renting dock and mooring space for boats. He maintained, for use in that business, the sailboat "Gloria" and a power boat, "Breezin' Thru," until each was sold in the latter part of that year. Expenses *368 of that business for 1949 consisted of the following: Administrative Salaries & Labor
$ 9,611.07
Rent
6,000.00
Repairs
8,310.68
Utilities
998.01
Laundry
91.87
Fuel
673.76
Supplies
205.39
Advertising
395.44
Groceries
803.30
Travel Expense for Boat
2,470.61
Insurance
3,353.75
Payroll Taxes and Compensation
Ins.
1,007.26
Real Estate Taxes
2,141.62
Airplane
1,615.35
Depreciation
13,974.57
Miscellaneous
1,014.53
Charter Trip Expense
3,639.51
Permits, Fees and Licenses
204.00
Total
$56,360.72
Opinion MURDOCK, Judge: The Commissioner has conceded that Bearl was engaged in business in so far as his operation of the docking facilities was concerned. However, he contends that the vessels, the Gloria and Breezin' Thru, had nothing to do with that business or any other business carried on by Bearl during 1949, and the expenses incident to the boats can not be deducted in computing a net operating loss for 1949 as the basis for a 1947 carry-back deduction. He claims that Bearl had those two vessels for his own pleasure. His argument is weak in so far as it relates to the Gloria. Bearl purchased that vessel in 1938 or 1939 and chartered it *369 regularly and frequently until World War II put an end to that business. He retained the vessel during the war because he thought he could continue chartering it thereafter. However, he was not able to use it successfully after the war although he continued to make strenuous efforts to do so until he finally sold the boat in the latter part of 1949. He had not used that boat for pleasure or for his own personal convenience in any other way. He was the captain of the boat and he sailed it when it went on charter, but otherwise he made no use of it. He and his son, who operated the docking facilities, were making reasonable efforts to get some income out of that boat during the first 9 months of 1949. The evidence in regard to the Breezin' Thru gives a little more support to the Commissioner's contention, but there is a clear preponderance in Bearl's favor. He purchased that vessel in 1946 and had it reconditioned at considerable expense, more than he had anticipated. He had conducted a great many educational and other type of tours prior to World War II and he hoped to get back into a similar business after that war. He intended to use the Breezin' Thru in connection with a tour business *370 which he hoped to establish. He actually used it in 1947 to develop itineraries for an Alaskan tour. Ill health caused him to give up his plans for continuing the tour business and he decided to charter the Breezin' Thru. He advertised extensively that the boat was available for charter and he tried in many ways to charter the boat. He succeeded in chartering it a few times but not enough to make it profitable. He was also endeavoring to sell the vessel and finally in the latter part of 1949 he succeeded. He did not buy this vessel as a pleasure craft for himself but only as a business venture. He endeavored to use it in his business at all times during his period of ownership. The fact that he was not able to use it profitably is not a good reason for holding that expenses of maintaining it were not expenses of his business during 1949. A finding has been made that both vessels were maintained for use in Bearl's regular business during 1949. The above holding makes it unnecessary to determine whether the various expenditures were paid in connection with the dock business or in connection with the vessels. The Commissioner has conceded in his brief tha a number of the expenditures *371 claimed were actually paid during 1949 in connection with either the docking facilities or the vessels, and the petitioner has accepted a great many of the figures set out in the Commissioner's brief. All figures agreed to by both parties have been incorporated in the findings of fact. Only those items disputed need be mentioned. The Commissioner contends that $1,292.45, representing wages, should be capitalized. The evidence on this is not too clear or convincing, but such as it is, it preponderates in favor of Bearl. The amount should not be eliminated as a capital expenditure. The only other difference between the parties in connection with the administrative salaries and wages seems to be that the Commissioner has failed to allocate some administrative salaries as expenses of the boat and dock facilities business. The evidence shows the amount which should be allocated. A finding has been made that the total administrative salaries and labor allowable as a deduction in this connection is $9,611.07. Petitioners concede that repairs should be reduced by $225.33 paid in 1950. The next item which need be mentioned is fuel. Bearl concedes that there is a duplication of $811.98 in *372 this item and in the amount to be deducted as charter trip expense. No other adjustment need be made and $673.76 has been found to be the correct amount. Bearl concedes that $200 should be eliminated from advertising. The Commissioner contends that a part of the grocery expenditure went to feed workmen who were engaged in construction work and that part of this expenditure should be capitalized. The petitioner has failed to show that that contention is not well taken, and following the principle of , one-fourth of the whole, or $267.77, has been eliminated leaving a net deduction of $803.30. The Commissioner questions all of the items going to make up the travel expense. $963.33 of the whole he says is duplicated in the charter trip expense. There was no such duplication and the amount was a proper deduction of the business. Likewise, the amount of $187.40, representing "Jennie Fish travel," was a proper deduction. The evidence also indicates that $1,069.88, representing the expense of a round trip to New York where Bearl attended the Boat Show in an effort to make connections for his business at Newport, was an ordinary and *373 necessary expense of that business. The petitioner concedes that $1,500 of the $3,188.57, representing expense of a European trip, is not deductible since it was chargeable to the sale of the Breezin' Thru. The evidence indicates that an even larger amount should be eliminated for that reason. The Commissioner, in his proposed finding on this point, states that Gertude accompanied Bearl on this trip, and the petitioners indicate that they have no objection to that part of the finding. The record would not justify any deduction for the expenses of Gertrude's trip. Those would be personal or family expenses and not deductible. The evidence indicates, however, that while Bearl was on this trip he did search for a source of hulls which he hoped to use in his business at Newport, and again following the principle of , a portion of the total expense has been allocated to the business for that reason. The total deduction for travel expense to be allowed is $2,470.61. The Commissioner has suggested $3,353.75 as the correct figure for insurance and the petitioners have made no objection thereto. The airplane expense is a part of the expense of the *374 business because it was part of the equipment of the Breezin' Thru, even though it was not profitably used during 1949. The figure of $13,794.57 suggested by the Commissioner for depreciation has been conceded by the petitioners. Dental bills for Jennie Fish, resulting from an accident suffered by her while working one one of the boats, are allowable deductions as part of miscellaneous expenses. Three dollars has been eliminated from the total of miscellaneous expenses because that total amount was paid for traffic fines which the record fails to show were ordinary and necessary expenses of the business. Bearl chartered the Breezin' Thru for one trip during 1949 and received as payment of the actual expenses incident to that trip. He reported $3,639.51 as the amount which he received and the record justifies the deduction of a like amount as expense of the trip for which he was fully compensated. The findings will enable the parties to make computations under Rule 50. Decisions will be entered under Rule 50.